OPINION
Appellant, Anthony D. Rich, appeals the August 17, 1999 judgment entry of the probate division of the Ashtabula County Court of Common Pleas appointing appellee, Robert McNair, as guardian of appellant's estate.
Appellant is eighty-two years old. He resides with his wife, Celia, who is incompetent and dependent on others for her care. Appellant has been and continues to be her primary care giver.
In 1997, appellant's son, Robert Rich ("Robert"), used a power of attorney executed by Celia to withdraw $14,329 from a bank account that appellant held jointly with his wife. Robert used that money to establish a bank account for Celia in Columbus when she entered an assisted living program there. Celia revoked that power of attorney in November 1997. In 1998, Robert went to the bank with his mother and had her withdraw $5,680 from a joint account she held with appellant in order to open an individual checking account for Celia.
In May of 1998, appellant withdrew over $77,000 from two bank accounts that he and his wife maintained. He had heard that Robert intended to fire the home health nurse and was concerned that he was "going to make trouble." To prevent Robert from accessing those funds, appellant gave the money to his neighbor, Donna Estok ("Ms. Estok"), and asked her to place it in an account for the benefit of appellant and Celia. Ms. Estok did as appellant requested.
Appellant was admitted to Ashtabula County Medical Center intensive care unit on June 7, 1998. While appellant was still in intensive care, his cardiologist suggested that he be given a psychiatric evaluation. This evaluation was conducted by Dr. Y. William Kim ("Dr. Kim"), on June 9, 1998. Dr. Kim examined appellant for approximately forty to fifty minutes. Based on his examination of appellant and conversations with appellant's son, Joseph Rich ("Joseph"), and daughter-in-law, Valerie, Dr. Kim tentatively recommended a legal guardianship for appellant.
On June 26, 1998, Joseph filed a motion for an emergency appointment of guardian for his father. The motion was granted on the basis of Dr. Kim's report. An objection to the motion for appointment of guardian was filed by appellant on July 1, 1998. On that same date, Joseph filed a motion for temporary appointment of guardian. After a status hearing on July 24, 1998, the probate court ordered an assessment of appellant at Laurelwood Hospital Counseling Center. On August 17, 1999, the probate court found that a guardian for the person of appellant was not necessary; however, the court appointed appellee as guardian of the estate of appellant.
Appellant filed a timely notice of appeal on September 14, 1999, and made the following assignment of error:
 "[1.] The Trial Court's decision finding a Guardianship was necessary for the Estate of [appellant] was contrary to law."
 Appellant contends that the probate court erred in finding that appellee presented clear and convincing evidence of appellant's incompetence. We agree.
R.C. 2111.01(D) defines an incompetent as "* * * any person who is so mentally impaired as a result of a mental or physical illness or disability, or mental retardation, or as a result of chronic substance abuse, that the person is incapable of taking proper care of the person's self or property * * *." Similarly, in In re Guardianship of Wilson
(1926), 23 Ohio App. 390, 393, the following rule for appointing a guardian for an alleged incompetent was set forth:
 "[T]he court, before appointing a guardian for an alleged incompetent, should be fully and completely satisfied that the claimed infirmity or infirmities of the alleged incompetent are of such a nature and character as to prevent such person from fully and completely protecting herself and property interests from those about her who would be inclined to and would take advantage of such person in the way of securing her property or means without giving proper service or value therefor."
In In re Bolander (1993), 88 Ohio App.3d 492, 504, this court noted that "a guardian should only be appointed under the most dire circumstances." In Bolander, Ms. Bolander, the appellant, was mentally capable of handling her day-to-day affairs. According to the court appointed psychiatrist, there were "no impairments in intellectualfunctioning of sufficient severity to warrant a diagnosis of dementia." (Emphasis sic.) Id. at 501. However, the appellant was desirous of attention and attracted to younger men. Id. Additionally, she had given away a large sum of money. Id. Faced with that set of facts, this court held that the psychiatrist's report "clearly does not provide the basis for the continuation of the guardianship, regardless of how any of us might approve or disapprove of how and on whom [the appellant] spends her money." Id. at 504.
The facts of this case suggest that the probate court did not adequately consider a broad array of evidence that appellant was entirely competent to care for himself and his wife and to manage his property. At appellant's guardianship hearing, Dr. Steven Kanter ("Dr. Kanter"), a licensed psychologist retained by appellant, testified that appellant was competent and capable of taking care of himself, his property, and his dependents.
In appellant's discharge summary, after appellant had been subjected to a seventy-two hour psychological and psychiatric evaluation at Laurelwood Hospital ("Laurelwood"), Dr. John Heather, a psychiatrist at Laurelwood, suggested that appellant would need a guardian for financial matters, but "[t]here was not enough evidence to suggest that the patient would need full guardianship of estate, nor was there enough evidence to be able todeclare him incompetent."[1] (Emphasis added.)
Dr. Kim appeared as a witness for appellee. He testified on cross examination that appellant's score of thirty out of thirty on the Mini Mental Status Exam given to him at Laurelwood was "good," and that a score of thirty out of thirty would indicate no evidence of dementia. Dr. Kanter testified that a score of twenty-nine out of thirty would indicate that appellant was "very high functioning."
Karen Osowski, a behavioral health associate who works for the Visiting Nurses Association of Cleveland, made eight visits to appellant's home. She testified that she noted no deficiencies in appellant's care of himself and his wife. Kathleen Hillyer Oxley, a primary case manager for psychiatric mental health patients, visited appellant's home three times per week from January 1997 through March 1997. She also testified that appellant took good care of his wife.
It is undisputed that appellant maintains his house and pays his bills. Furthermore, appellant is an active member of his community and holds several positions of responsibility. At the time of the guardianship hearing, appellant was president of the Ashtabula City Housing Appeal Committee; chairperson of the Ashtabula Transportation Advisory Board; and, vice president of the retirees chapter of United Auto Workers Local 274. People who interacted with appellant, while he was serving in these various capacities, testified at the guardianship hearing that he played an active role in those organizations and was more than capable of carrying out his duties.
The primary action on the part of appellant that the probate court has indicated as evidence of his incompetence was the transfer of funds from joint savings accounts held by appellant and his wife to Ms. Estok. Appellant has known Ms. Estok for over twenty years. He asked Ms. Estok to take care of his money, because he knew she had handled her mother's estate.
Furthermore, the evidence indicates that the foregoing banking transactions were triggered as a reaction, on appellant's part, to the latter of the two withdrawals of funds Robert made from his parents' bank account. In addition to that withdrawal of funds, Robert had had Celia execute a power of attorney in his favor. He used that power of attorney to have Celia removed to Columbus for a time, to make a withdrawal of $14,239 from his parents' bank account, and to assist his mother in filing for a legal separation, which led to a restraining order against appellant preventing him from entering his own home. Not surprisingly, appellant believed that he could not trust his one son and needed to follow a course of action to protect his assets from him.
Consequently, appellant withdrew a portion of his savings and gave it to a person that he was confident he could trust, Ms. Estok. The probate court found appellant's actions regarding this transfer of funds to Ms. Estok "impossible to ignore" as it related to appellant's competency. In view of the actions taken by Robert prior to appellant asking Ms. Estok to manage a portion of his estate for him, this court concludes that appellant's behavior was understandable under the circumstances.[2]
While appellant's course of action may not have been in accordance with that which would have been recommended by a competent attorney, and while this court is sympathetic to the concerns appellant's family members have expressed about his ability to manage his assets, his actions were not so outrageous as to justify that he be denied the right to manage his estate.
In Bolander, 88 Ohio App.3d at 504, we stated that a guardian should be appointed only under "the most dire circumstances." The record here suggests the conclusion that appellant cares for himself and his seriously ill wife, including administering her medications; drives; manages his personal finances and those of his wife; and, serves on the Ashtabula City Housing Appeal Committee, the Ashtabula Transportation Advisory Board, and is vice president of the retirees chapter of his local union. Appellant's financial transactions with Ms. Estok do not rise to the level of the "dire circumstances" that would merit the appointment of a guardian over his assets. The evidence intake in this case suggests that appellant is a competent individual who is active in his community and respected by those with whom he interacts.
To reverse a probate court's appointment of a guardian for an incompetent, an appellate court must find that the necessity of such appointment was against the manifest weight of the evidence. In re Wilson
23 Ohio App. at paragraph three of the syllabus. R.C. 2111.02(C)(3) provides that if a "hearing concerns the appointment of a guardian or limited guardian for an alleged incompetent, the burden of proving incompetency shall be by clear and convincing evidence." The evidence presented to the probate court regarding appellant's incompetency was tenuous at best, and, in our view, did not rise to the level of clear and convincing evidence of incompetency. Therefore, we find that the probate court's appointment of a guardian for the estate of appellant was against the manifest weight of the evidence.
Although this court is reluctant to indulge in advisory commentary, in order to allay the understandable concerns of appellant's family regarding his financial well-being, we suggest that appellant consult with his attorney in the immediate future with a view towards finding a respectable third party, such as the trust department of a reputable financial institution, to assist him with the management of his assets.
Appellant's assignment of error is well-taken, and the order of the probate court appointing a guardian for the estate of appellant is reversed.
 ______________________________________ PRESIDING JUDGE DONALD R. FORD
CHRISTLEY, J., O'NEILL, J., concur.
[1] Dr. Kanter testified that most of the psychological evaluation report generated at Laurelwood relied on a Rorschach test, which is a type of personality test that is not suitable for determining an individual's competency.
[2] The probate court's judgment entry implies that appellant's confidence in the Ms. Estok was misplaced. However, when appellant gave Ms. Estok the proceeds from his bank account, she used the money to open an individual savings account at First Merit Bank. At the time she opened the account, Ms. Estok informed the bank that she was opening the account at the request of appellant and that the money being deposited into the account was the property of appellant. Ms. Estok later filed a lawsuit to settle ownership of the monies after the bank closed the account due to conflicting claims being asserted as to ownership of the assets. Those conflicting claims arose from the restraining order entered against appellant and from the appointment of appellant's son Joseph as his guardian. While the probate court implies that the filing of the suit by Ms. Estok is proof of her bad faith, this court interprets it as evidence of her loyalty to appellant. When the bank closed her account, Ms. Estok could have simply washed her hands of the matter. Instead, she filed a lawsuit in order to carry out appellant's instructions to set aside that money for the care of appellant and his wife. Furthermore, as a third-party defendant to Ms. Estok's lawsuit, appellant asked the court to order First Merit Bank to redeposit the money into Ms. Estok's account.